IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, : | |
| : | Case No. 1:18-cr-58 |
| Plaintiff, : | |
| : | Judge Susan J. Dlott |
| v. : | |
| : | **ORDER DENYING DEFENDANT'S** |
| ISRAEL BANUELOS, : | **MOTION FOR COMPASSIONATE** |
| : | **RELEASE** |
| Defendant. : | |
| : | |

This matter is before the Court on Defendant's Motion for Compassionate Release (Doc. 135) and the Motion for Order Reducing Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) Supplementing Defendant's Motion for Compassionate Release (Doc. 138). The United States opposes Defendant's motions. (Doc. 143). For the reasons set forth below, Defendant's motions will be **DENIED**.

## I.  BACKGROUND

Defendant Israel Banuelos pled guilty, on April 25, 2019, to conspiracy to possess with intent to distribute and to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. §§ 841 and 846. (Docs. 105, 106.) Banuelos (a.k.a. "Luis Rodriguez Lugo") met two co-defendants at a Starbucks parking lot and retrieved from a co-defendant's rented vehicle a bag containing approximately 1,000 grams of cocaine. (Doc. 105 at PageID 387–88.) After his attempt to flee failed, police arrested Banuelos without incident. (*Id.* at PageID 388.) At the time of the instant offense, Banuelos was on supervised release following a 2008 conviction in the Northern District of Oklahoma for possessing with intent to distribute 100 kilograms or more of marijuana, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(vii). *See United States v. Banuelos*, Case 1:19-cr-36 (transferring jurisdiction of supervision to the Southern District of Ohio). Pursuant to the

terms of his plea agreement, the Court sentenced him to 60 months in prison to run concurrently with the sentence imposed for his supervised release violation followed by four years of supervised release and forfeiture of over $150,000 in drug proceeds. (Doc. 132.)

Banuelos has been incarcerated since his arrest on April 6, 2018. He is currently housed at FMC Lexington, a federal medical center operated by the Bureau of Prisons ("BOP"). His projected release date is July 10, 2022. In addition, he has an Immigration and Customs Enforcement ("ICE") detainer due to his immigration status.

Banuelos now moves for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). (Docs. 135, 138.) Banuelos has undergone a kidney transplant which requires his continued use of immunosuppressant medications, and he suffers from prediabetes, hypertension and a seizure disorder which make him unusually susceptible to severe illness if he were to contract COVID-19 while incarcerated. (Doc. 135-1 at PageID 650–54.) He requests that his sentence be reduced to time served.

## II.  LEGAL STANDARD

The Court lacks authority to resentence a defendant, except as permitted by statute. *United States v. Houston*, 529 F.3d 743, 748–49 (6th Cir. 2008). "The compassionate release provisions were first included in the Sentencing Reform Act of 1984 . . . to be a 'safety valve' to reduce a sentence in the 'unusual case in which the defendant's circumstances are so changed, such as by terminal illness, that it would be inequitable to continue the confinement of the prisoner.'" *United States v. Ebbers*, 432 F. Supp. 3d 421, 430 (S.D.N.Y. 2020) (quoting S. Rep. 98-225, at 121 (1983)). The 1984 provisions empowered only the BOP Director to file a motion for compassionate release, "[y]et the Director seldom wielded this significant power." *United States v. Jones*, ___ F.3d ___, 2020 WL 6817488, *3 (6th Cir. Nov. 20, 2020). For instance, the

BOP approved only 6% of 5,400 compassionate release applications received between 2013 and 2017. *Id.* (referring to Christie Thompson, *Frail, Old and Dying, but Their Only Way Out of Prison Is a Coffin*, N.Y. TIMES (Mar. 7, 2018), https://www.nytimes.com/2018/03/07/us/prisons-compassionate-release-.html (citing data provided by the BOP)).

Frustrated that the Director acted so infrequently, Congress passed the First Step Act of 2018. "Section 603(b) of the First Step Act—titled 'Increasing the Use and Transparency of Compassionate Release'—ousted the BOP from its preclusive gatekeeper position and amended 18 U.S.C. § 3582(c)(1)(A)." *Id.* at ___, 2020 WL 6817488, at *4; *See* First Step Act of 2018, Pub. L. 115-391, Title VI, § 603(b), 132 Stat. 5194, 5239. Pursuant to § 3582(c)(1)(A)(i):

> The court may not modify a term of imprisonment once it has been imposed except that--
> **(1)** in any case--
> **(A)** the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--
> **(i)** extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Thus, under the current provisions, an incarcerated person can file for compassionate release after either exhausting the BOP's administrative process or thirty days after the warden received the compassionate release request, whichever is earlier. *Id.* Once this administrative process has occurred, the Court employs a three step evaluation to determine: (1) whether "extraordinary and compelling reasons warrant" the requested sentence reduction; (2) whether

3

the reduction is consistent with applicable Sentencing Commission policy statements; and (3) whether, considering the applicable section 3553(a) factors,[1] the reduction is warranted under the particular circumstances of the case. *Jones*, ___ F.3d at ___, 2020 WL 6817488, at *6 (footnote added); 18 U.S.C. § 3582(c)(1)(A). "In cases where incarcerated persons file motions for compassionate release, federal judges may skip step two of the § 3582(c)(1)(A) inquiry and have full discretion to define 'extraordinary and compelling' without consulting the policy statement [USSG] § 1B1.13." *Jones*, ___ F.3d at ___, 2020 WL 6817488, at *9 (concluding that § 1B1.13 applies only where the BOP Director files the compassionate release motion). A court's decision to grant compassionate release is discretionary. *Id*. at *5. A person seeking sentence reduction bears the burden of proving entitlement to compassionate release. *Ebbers*, 432 F. Supp. 3d. at 426; *United States v. Hill*, No. 5:14CR337, 2020 WL 5104477, at *1 (N.D. Ohio Aug. 31, 2020).

## III. ANALYSIS

In the case at bar, Banuelos exhausted the required administrative remedies by petitioning the warden for compassionate release at least thirty days prior to filing his motion. (Doc. 138-1 at PageID 713.) Therefore, his motion is ripe for consideration on the merits. *See United States v. Alam*, 960 F.3d 831, 834 (6th Cir. 2020).

### A. Extraordinary and Compelling Reason

In this case, Banuelos suffers from several medical conditions identified by the Centers for Disease Control and Prevention ("CDC") as among those that increase or may increase an individual's risk of severe illness from COVID-19. CENTERS FOR DISEASE CONTROL AND

---

[1] Section 3553(a) factors include: (1) the nature and circumstances of the offense; (2) the defendant's history and characteristics; (3) the need for the sentence imposed to reflect the seriousness of the offense, provide just punishment, and promote respect for the law; (3) the need to protect the public from further crimes of the defendant; (4) the need to provide the defendant with needed educational or vocational training, medical care or other treatment; (5) the kinds of sentences available; (6) the sentencing guideline range; (7) the need to avoid unwarranted sentence disparities among defendants with similar records guilty of similar conduct; and (8) the need to provide restitution to victims of the offense. 18 U.S.C. § 3553(a).

4

PREVENTION, CORONAVIRUS DISEASE 2019 (COVID-19), *People With Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited December 10, 2020).  Of particular concern, Banuelos continues to take immunosuppressive medications following his kidney transplant.  (Presentence Investigation Report ("PSR") at ¶ 65.)

In addition, as of December 10, 2020, the Bureau of Prisons reported the following data from FMC Lexington: 115 inmates and 13 staff members with positive COVID-19 tests, nine inmate COVID-19 deaths, and 206 inmates and 28 staff members recovered from COVID-19.  BUREAU OF PRISONS, *COVID-19 Coronavirus*, https://www.bop.gov/coronavirus/ (last accessed December 10, 2020).  In a correctional facility, it is difficult to maintain social distance and engage in other COVID-19 mitigation efforts as inmates must share communal living spaces and materials required for disinfection are often limited or unavailable.

Numerous courts have found extraordinary and compelling reasons under similar circumstances.  "During the COVID-19 pandemic, courts have found extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility."  *United States v. Provost,* No. 3:18-cr-42, ___ F. Supp. 3d ___, 2020 WL 4274570, at *4 (E.D. Va. July 24, 2020) (internal quotation marks omitted) (granting motion for compassionate release).  For instance, in July, this Court granted compassionate release to an inmate with diabetes and high blood pressure where the correctional facility failed to implement adequate sanitation measures, did not require masks, and fired the only onsite doctor.  *United States v. Crawford*, No. 2:18-cr-00075-3, 2020 WL 3869480, at *2 (S.D. Ohio July 9, 2020).  *See also United States v. Smith,* No. 4:15-cr-019, 2020 WL 3317222, at *4–5 (N.D. Ohio June

18, 2020) (finding defendant's age, history of heart disease, kidney disease, and diabetes constituted extraordinary and compelling reasons for reduction but denying motion on other grounds); *United States v. Jackson*, No. 5:02-cr-30020, 2020 WL 2735724, at *3 (W.D. Va. May 26, 2020) (COVID-19 pandemic and defendant's type two diabetes, asthma, sleep apnea, and obesity constituted an extraordinary and compelling reason for sentence reduction); *United States v. Zukerman*, 451 F. Supp. 3d 329, 335 (S.D. N.Y. April 3, 2020) (defendant's age, diabetes, hypertension, and obesity satisfied the extraordinary and compelling reason requirement); *United States v. Perez*, 451 F. Supp. 3d 288, 293–94 (S.D.N.Y. April 1, 2020) (defendant's recent surgeries and pain and vision complications, along with his inability to care for himself in prison where social distancing in his small cell was impossible, constituted extraordinary and compelling reasons for release).

Banuelos' serious health conditions, including his immunosuppressed state due to post-transplant immunosuppressant use, place him at increased risk of serious illness from COVID-19. Combined with the current outbreak of active COVID-19 cases at his correctional facility, the Court concludes that an extraordinary and compelling reason exists for his compassionate release.

### B. 18 U.S.C. § 3553(a) Factors

The Court next must consider the section 3553(a) factors. *United States v. Jones*, ___ F.3d ___, 2020 WL 6817488, *3 (6th Cir. Nov. 20, 2020). Among the factors to be considered are the nature and characteristics of the Defendant's offense; the Defendant's criminal history; the need for the sentence imposed to reflect the seriousness of the Defendant's conduct; the need to protect the public; the Sentencing Guidelines range; and the need to avoid unwarranted sentencing disparities. 18 U.S.C. § 3553(a).

In the case at bar, the nature and circumstances of this offense are serious. Drug Enforcement Administration ("DEA") Agents observed Banuelos meet his co-defendants and retrieve a bag from his co-defendants' rental car. (PSR ¶ 26.) When Banuelos observed the Agents following him, he attempted to flee in his car. (PSR ¶ 27.) After determining that he could not escape by automobile, Banuelos abandoned his vehicle and attempted to flee on foot. (*Id.*) Between Banuelos and his co-defendants, DEA agents recovered approximately three kilograms of cocaine and more than $150,000 in duct-taped bundles of United States currency as well as packaging materials for the drugs and money. (PSR ¶¶ 29–30.) As part of his plea agreement, the parties agreed that Banuelos is personally accountable for approximately one kilogram of cocaine. (PSR ¶ 30.)

This is not Banuelos' first federal narcotics conviction. In 2008, a grand jury in the Northern District of Oklahoma indicted Banuelos and a different set of co-defendants with hauling methamphetamine, cocaine, and marijuana into the Northern District of Oklahoma via a specially modified truck and then repackaging and storing the controlled substances at stash houses prior to distribution to street level dealers. *United States v. Banuelos*, No. 08-cr-55-003-TCK (N.D. Ok. 2008). In that case, Banuelos ultimately pled guilty to possessing with intent to distribute 100 kilograms of more of marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(vii) and conspiring to possess with intent to distribute 100 kilograms or more of marijuana, in violation of 21 U.S.C. §§ 841 and 846. (Case No. 1:19-cr-36, Doc. 2 at PageID 14–15.)

Banuelos was incarcerated on the Northern District of Oklahoma conviction from 2008 to 2015. (PSR ¶ 77.) He was deported to Mexico in 2015. (PSR ¶ 76.) He reentered the United States in 2017 without reporting his reentry to the United States Probation Office as required,

7

adopted the name "Luis Rodriguez Lugo," and worked as a mason in Tulsa, Oklahoma before committing the instant offense. (PSR ¶ 76.) He was still on supervised release for his prior federal drug conviction when he committed the instant offense.

As for the need for the sentence imposed to reflect the seriousness of the Defendant's conduct and to avoid unwarranted sentencing disparities, the statutory term of imprisonment here is not less than five nor more than 40 years. 21 U.S.C. § 841(b)(1)(B)(ii). Consistent with his guideline sentencing range, the Court sentenced Banuelos to the statutory minimum term of five years imprisonment. (Doc. 132.)

Finally, the Court struggles with balancing Banuelos' immunocompromised state and the need to protect the public from his potential future crimes. Banuelos' health concerns are significant. It must be very difficult to be incarcerated during a pandemic while also taking medications that suppress one's immune system. However, if this Court grants his motion for compassionate release, Banuelos will then be subject to an ICE detainer. The Court notes that the existence of an ICE detainer alone does not require compassionate release denial.[2] *See, e.g., United States v. Lopez*, No. 97-01117 ACK-2, 2020 WL 6298061 (D. Haw. Oct. 27, 2020) and *United States v. Villalobos-Gonzalez*, No. CR15-0202-JCC, 2020 WL 4569697 (W.D. Wash. Aug. 7, 2020). If Banuelos' motion is granted here, though, he will be released from BOP custody to Department of Homeland Security ("DHS") custody and then be deported. Banuelos offers no evidence that his exposure risk in DHS custody or during deportation is lower than his exposure risk at a BOP medical facility.

In addition, serious concerns remain regarding the need to protect the public from the Defendant's potential future crimes. Unlike the defendants in the cases upon which Banuelos

---

[2] The Court commends Defendant's counsel for her thorough briefing on this issue. (Doc. 145 at PageID 728–731.)

relies, he remains a danger to the community. While the Court in no way minimizes his very real health concerns, his health has not impacted his criminal abilities. Banuelos underwent a kidney transplant in early 2005. (PSR at ¶ 64.) Yet, he committed the prior federal offense in 2008, was incarcerated from 2008 through his deportation in 2015, reentered the United States in 2017, and committed this crime in 2018. He is still only 37 years old. If he remains healthy through the deportation process, there is no impediment to him again reentering the United States to again engage in a narcotics conspiracy. In fact, his mother and four of his five siblings reside in Oklahoma, and at the time of the presentence investigation, his father planned to join them. (PSR at ¶ 57–58.) His teenaged son, with whom Banuelos hopes to build a relationship once he is released, also lives in Oklahoma. (PSR at ¶ 60.) Thus, even if he is released early and safely deported, Banuelos has significant incentive to once again violate the law. Therefore, in this case, the section 3553(a) factors weigh against compassionate release.

## IV.     CONCLUSION

After considering the factors set forth in 18 U.S.C. § 3553(a), the Court concludes that a reduction of sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) is not warranted in this case. Accordingly, Defendant's Motion for Compassionate Release (Doc. 135) and Motion for Order Reducing Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) Supplementing Defendant's Motion for Compassionate Release (Doc. 138) are **DENIED**.

**IT IS SO ORDERED.**

S/Susan J. Dlott_____
Judge Susan J. Dlott
United States District Court